IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YOUTH EDUCATION IN THE ARTS,<br>601 W. Hamilton Avenue<br>Allentown, Pennsylvania 18101<br><br>       Plaintiff<br><br>v.<br><br>EXECUTIVE COACH, INC.,<br>506 North Loop 12<br>Irving, Texas 75061<br><br>       Defendant | CIVIL ACTION NO. _____ |

## COMPLAINT

Plaintiff, YOUTH EDUCATION IN THE ARTS ("Plaintiff" or "YEA"), by and through its counsel, Gross McGinley, LLP, files the instant Complaint and avers the following facts in support thereof:

### I.  THE PARTIES

1. Plaintiff, Youth Education in the Arts, is a not-for-profit corporation, existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 601 W. Hamilton Street, Allentown, Lehigh County, Pennsylvania, 18101.

2. Defendant, Executive Coach, Inc. ("Defendant"), is a corporation providing coach transportation throughout the Commonwealth of Pennsylvania, with a principal place of business located at 506 North Loop 12, Irving, Texas, 75061.

### II.  JURISDICTION AND VENUE

3. This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

4. This Honorable Court has personal jurisdiction over the Defendant with respect to the specific subject matter of this action because Defendant has solicited and transacted business within the Commonwealth of Pennsylvania, has offered its coach busing services in Pennsylvania, and there is a nexus between Defendant's conduct and Plaintiff's claims in this action.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to Plaintiff's claims occurred herein.

### III.   COUNT I- BREACH OF CONTRACT

6. On or about April 15, 2013, Plaintiff and Defendant entered into a written agreement ("Agreement"), whereby Defendant was to provide four (4) new touring coaches, one (1) Entertainer Coach, and qualified and experienced drivers for Plaintiff's Cadets 2013 Summer Tour. A true and correct copy of said Agreement is attached hereto, marked as **Exhibit "A"** and incorporated herein by reference.

7. In exchange for Defendant's coaches and transportation services, Plaintiff was to make installment payments to Defendant in the sum of $194,000.00. Plaintiff has honored its obligations under the contract by advancing in the sum of $94,800.00 of the total contact price, yet Defendant failed to uphold its side of the bargain thereby entitling Plaintiff to a significant refund of the amounts advanced in addition to forcing Plaintiff to incur substantial out-of-pocket expenses.

8. As part of Defendant's obligations under the Agreement, Defendant was responsible as follows:

> Executive Coach will provide **three qualified and experience [sic] drivers** for the buses. Youth Education in the Arts will provide qualified and experience [sic] drivers for one (1) bus and for one (1) Entertainer Coach who will be **trained and approved by Executive Coach.**

\*\*\*

>  Executive Coach shall be responsible for **all maintenace [sic] and repairs** on the coaches…

See Exhibit "A" (emphasis added).

9. Defendant, despite having an obligation to provide qualified and experienced drivers, breached the Agreement by providing incompetent drivers and/or drivers who could not otherwise complete the services in full, all of which threatened Plaintiff's Cadets' safety, most of whom were minors.

10. On more than one occasion, the drivers provided by Defendant were inadequate, with one driver causing an accident and otherwise acting unprofessionally, and another being physically incapable of fulfilling the obligations for the entire duration of Plaintiff's Cadets 2013 Summer Tour. Another driver nearly tipped one of the coaches when backing up before crashing into a pole. Additionally, one driver hit a toll booth and damaged the bus but never reported it to Plaintiff. Plaintiff learned of the incident from the Cadets. Plaintiff later learned that all three drivers provided by Defendant had no experience driving coach buses prior to the contract at issue.

11. Plaintiff, on more than one occasion, put Defendant on notice with respect to Defendant's material breach regarding the inadequate/incompetent drivers selected by Defendant, and Defendant failed to properly remedy the same. In fact, Plaintiff's own volunteer had to assume the role of driver for the Cadets 2013 Summer Tour, despite the fact that Plaintiff had already paid for Defendant's drivers' services.

12. Defendant took 8 days to attempt to replace their inadequate/incompetent drivers, and when replacement drivers finally arrived, they were without bags and gear and were not properly prepared by Defendant.

13. Additionally, Defendant, despite having an obligation to provide quality coaches and despite being responsible for all maintenance and repairs associated therewith (except for routine maintenance on the Entertainer Coach, only), breached this Agreement by providing Plaintiff with wholly inadequate and defective coaches.

14. The coach buses provided to Plaintiff had, *inter alia*, the following issues:

   a. On June 13, 2013, the Entertainer Coach (Prevost Les Mirage Coach) would not start, requiring a jump start. The solenoid unit at the battery pack was malfunctioning, requiring the cables to be connected directly to the generator engine itself;

   b. On June 14, 2013, it was discovered that the battery pack on one of the coaches was only producing approximately eleven (11) volts, and the secondary alternator would produce no more than 11.25 volts. Typical voltage output is normally around 13.5 to 14.0 volts. The secondary alternator—a Leece-Neville unit—needed to be replaced and was so replaced on June 15, 2013.

   c. At all times relevant hereto, the on-board refrigerator on one of the coaches failed to operate properly (a "NorCold" unit). The power light indicates that the refrigerator was on, but the unit would not cool. It was discovered that the particular NorCold unit was no longer manufactured, causing Plaintiff to temporarily install a 110V "Dorm-sized" refrigerator at Plaintiff's own expense;

    d.    At all times relevant hereto, the air conditioning system on the Entertainer Coach failed to operate properly. The driver assigned by Defendant acknowledged that the air conditioning system had been producing strange noises. Upon inspection, it was discovered that the air conditioning system was completely destroyed, making it impossible to cool the Coach. The interior temperature of the Coach was consistently 80 or more degrees, causing a dangerous condition given the temperatures expected on Plaintiff's Summer Tour;

    e.    The sound systems and DVD players on the Entertainer Coach was not functional;

    f.    One of the coaches dropped its drive shaft while traveling thus necessitating service/maintenance and nearly causing an accident for the coach following it;

    g.    One of the coaches became inoperable for days forcing Plaintiff to squeeze the Cadets into only three coaches; and

    h.    Two of the coaches would not lock thereby jeopardizing Plaintiff and the Cadet's personal property.

15.    As noted, Plaintiff, on more than one occasion, put Defendant on notice with respect to Defendant's material breach regarding the inadequate and defective coaches, and Defendant failed or willfully refused to remedy the same causing considerable disruption to Plaintiff's Summer Tour in addition to out-of-pocket expenses.

16.    The issues enumerated above were at no point remedied by Defendant, but rather went unresolved and/or were remedied by Plaintiff at Plaintiff's expense.

17. Specifically, Plaintiff was forced to pay for certain repairs required of Defendant's coaches, rental fees for numerous replacement coaches, fuel costs associated with the replacement coaches, and wages, costs, and travel expenses associated with substitute drivers, including both Plaintiff's own personnel and hired third party replacements.

18. Additionally, Plaintiff suffered damage to its reputation and customer/client good will as a result of Defendant's actions and breaches of the Agreement between the parties.

19. Because of the numerous and repeated issues with respect to the coaches provided and because Defendant failed to cure these issues, Plaintiff had not choice but to terminate the Agreement and seek a refund of all amounts paid for services not performed, as permitted under the Agreement. See Paragraph 6 of Exhibit "A."

20. As a direct result of Defendant's breach of its Agreement with Plaintiff, Plaintiff suffered damages in excess of $75,000.00, representing additional expenses Plaintiff incurred, Defendant's failure to perform, and damage to Plaintiff's reputation and customer/client good will.

WHEREFORE, Plaintiff, YOUTH EDUCATION IN THE ARTS, respectfully requests that judgment be entered in its favor and against Defendant, EXECUTIVE COACH, INC., in an amount in excess of $75,000.00, together with costs of bringing this suit, and any other remedy this Honorable Court deems appropriate.

Respectfully submitted,

GROSS McGINLEY, LLP

Date: 11/21/14    By: _____
KIMBERLY A. SPOTTS-KIMMEL, ESQUIRE
SAMUEL E. COHEN, ESQUIRE
*Attorneys for Plaintiff*
33 S. Seventh St., PO Box 4060
Allentown, PA 18105
610-820-5450

# EXHIBIT "A"



Executive Coach, Inc.
506 North Loop 12
Irving, TX 75061
Phone: 214-492-1300 – Fax: 214-492-1400
www.usacoach.net

An agreement between Executive Coach, Inc. and Youth Education in the Arts
The Cadets 2013 Summer Tour
June 13 to August 11, 2013

## 1 Services Provided

Executive Coach, Inc. will provide four (4) New Touring coaches for The Cadets for their 2012 Tour Schedule as attached. Exectuvie Coach agrees to provide their services in accodance with this schedule, but it is agreed thar there may be small changes and adustments by Cadets management to facilitate housing, meetings or other events in close proximity to the scheudle destination.

Youth Education in the Arts is responsible for providing a written itinerary for the agreed tour the estimated mileage, excluding delievery of coaches is 10832 miles.

Executive Coach will also provide one "Entertianer Coach" with capacity to sleep a maximum of 12 people for the period of time and travel schedule.

Executive Coach will provide three qualified and experience drivers for the buses. Youth Education in the Arts will provide qualified and experience drivers for one (1) bus and for one (1) Entertainer Coach who will be trained and approved by Executive Coach.

Execitve Coach shall be responsible for all fuels and fluids in the four (4) coaches (see fuel surcharge below). **The Cadets will be responsible for all fuels and fluieds for the Entertainer Coach .**

Executive Coach shall be responsible for all maintenace and repairs on the coaches. **Youth Education in the Arts shall be resposible for all routine maintenace on the "Entertainer" Coach, including generator and cleaning of the coach.** Youth in the Arts is not responsible for repairs, parts or tires, unless such repairs shown to be direct result of a lack of routine maintenance or negligence.

**Equipment will delivered to the Cadets in Johnstown, PA on or before June 12 and will be returned to Executive Coach in Dallas August 13 or 14 2013 at a time to be determined by the schedule.**

1

2  Payment

Youth Education in the Arts will pay executive Coach a base charter fee of $194,000.00 for the the above equipment and services per the following schedule by direct funds transfers.

$20,000.00 to be paid on siging of he agreement
$30,000 to be paid on May 15, 2013
$44,800 to be paid on June 17, 2013
$24,800 to be paid on July 3, 2013
$24,800 to be paid on July 17, 2013
$24,800 to be paid on August 3, 2013
$24,800 to be paid on August 10, 2013

Total: $194,000.00

3  Fuel Surcharge
Base Charter fee is based upon diesel fuel prices of $3.80 per gallon. In the event that the price of fuel exceeds this amount, a weekly fuel surcharge will be billed to Youth Education in the Arts. The surcharge shall be calculated as the total fuel expenditure for the period (one week) multiplied by the decimal of the percentage that the average price paid exceeds $3.80 per gallon.

Example: fuel avarage cost is $4.00 and $5,000.00 was spent on fuel for the week. That is 5.26% over the $3.80 base price, therefore the surcharge is $5,000 x 0.526 = $263.00

4  Tolls and other fees
Youth Education in the Arts shall be responsible for all tolls, parking fees and entrance fees.

5  Restrictions
**Youth in Education in the Arts agrees not to run bus engine in idling for mor then 30 minutes.**
The use of tobacco products is strickly prohibited on all Executive Coach vehicles.
Department of Transportation regulations state that it is unflwful for a motor coach to carry kegs or gladd containers; the use of these items is stricly prohibited.
The use of alcohol by anyone under the age of 21 is prohibited, and failure to comply with this policy may result in immediate termination of the charter. The group leader of the Cadets holds responsibility in the entirety for the verification of all passengers ages.
Executive Coach will not be held liable for any items left on the buse or for lost time due to acts of God, breakdowns, traffic delays or road contitions beyond our control, execpt as governed by the equipment clause below.

<u>Youth in Education in the Arts agrae not to run the buses engines in idling for more than 30 minutes.</u>

6  Equipment
In the event of a breakdown, Executive Coach reserves the right to immedialty substitute with other equivalent equipment or carriers to perform the services contracted, subject to customer's approval. Procurement of substitute equipment and approval thereof will be expedited to the best of both parties ability. In the event that the customer is not reasonably satisfied with the substitute, or in the event of a repeated breakdown, the customer reserves the right to terminate the agreement and , in which case, the customer will receive a full refund of all mounts paid for services not performed by Executive Coach from the date of termination.

2

**7 Cancellation**

With the exeption of the "equipment" clause above, or failure to provide the contracted services, there will be no refunds of deposits. A cancellation fee of 25% of the quoted price will be charged on all charter buses cancelled prior to 15 days of scheduled departure dates. Charter buses cancelled within 15 days of scheduled departure dates will pay the full amount of the quoted given.

**8 Damages**

The chartering party (Youth Education in the Arts) will pay for all repairs and or lost revenue in the event that damage is caused by the party and a $500.00 (per vehicle – per event) cleaning fee will be charged if the equipment is left excessively dirty. **On completion of the charter, the motorcoach operator will ask for a signture on the Damage Assesment form stating your responsibilty for the damages. Costing will be settled by management staff on the following business day.**

**9 Drivers**

Department of Transportation policy states that a motor coach driver may be on duty for a period no longer than 10 hours with an 8 hour break in between duty times. For your safety and comfort, this policy must be enforced. The Cadets shall make all meals and accomodations avalable to all drivers. This shall include a suitable quiet area for the drivers to rest. Youth education in the Arts is not responsible for restautants or accomodations charges incurred by drivers excepts as included in the base charter fee.

**10 Prices**

| | |
|---|---|
| 3 – 56 passenger coaches with 3 Executive Coach drivers: | $135,00.00 |
| 1 – 56 passenger coach wihtout Executive coach driver: | $39,000.00 |
| 1 – EntertainerCoach without Executive Coach Driver: | $20,000.00 |

**Total:** $194,000.00

For Executive Coach, Inc.

_Carole H Slavgata_ (signature)
Date: 4/15/2013

For Youth Education in the Arts

_George Hale_ (signature)
Date: April 4, 2013

3